# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DONALD LOSTON                                     CIVIL ACTION

VERSUS                                            NO. 17-4842

BURL CAIN                                         SECTION: "R"(3)


## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Donald Loston, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On January 2, 2013, Loston was charged in the Parish of Lafourche for aggravated second degree battery, armed robbery, and cruelty to the infirmed.[1]  The state eventually entered a *nolle prosequi* as to the battery and cruelty to the infirmed charges.[2]  Loston was tried before a jury on July 15 and 16, 2013, and was found guilty of armed robbery.[3]

---

[1] St. Rec. Vol. 1 of 3, Bill of Information, 1/2/13.
[2] St. Rec. Vol. 1 of 3, Hearing Transcript, 7/12/13.
[3] St. Rec. Vol. 1 of 3, Jury Verdict, 7/16/13; Trial Transcript, 7/15/13; St. Rec. Vol. 2 of 3, Trial Transcript (con't), 7/15/13; Trial Transcript, 7/16/13.

Loston's motions for post-verdict judgment of acquittal and for new trial were denied.[4]  The court sentenced Loston to fifty years at hard labor without the benefit of probation, parole or suspension of sentence.[5]

Loston filed a direct appeal to the Louisiana First Circuit alleging that there was insufficient evidence to support his armed robbery conviction.[6]  The court denied petitioner's appeal on May 2, 2014.[7]  Loston did not file a writ application to the Louisiana Supreme Court.

On April 20, 2015, petitioner filed an application for post-conviction relief with the state district court in which he claimed: (1) he was constructively denied counsel when the trial court denied him his counsel of choice; (2) his appointed counsel had a conflict of interest; (3) ineffective assistance of counsel for failing to challenge the jury venire; (4) ineffective assistance of counsel for failing to secure expert testimony; (5) ineffective assistance of counsel by failing to investigate and subject the prosecution's case to meaningful adversarial review; and (6) insufficient evidence supported his conviction.[8]  The state trial court denied petitioner's application on July 22, 2015, finding "there are no issues of fact or law upon which relief may be granted."[9]  The Louisiana First Circuit Court of Appeal denied petitioner's application for supervisory writ without stated reasons.[10]  The Louisiana Supreme Court denied petitioner's application for review finding he failed to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668 (1984), and he failed to satisfy his post-

---

[4] St. Rec. Vol. 1 of 3, Motion for Post-Verdict Judgment of Acquittal, 7/17/13; Motion for New Trial, 7/17/13; St. Rec. Vol. 3 of 3, Sentencing Minutes, 7/24/13; Sentencing Transcript, 7/24/13.

[5] St. Rec. Vol. 1 of 3, Commitment Order, 7/26/13; St. Rec. Vol. 3 of 3, Sentencing Transcript, 7/24/13.

[6] St. Rec. Vol. 3 of 3, Appeal Brief, 2013-KA-1885, 12/2/13.

[7] State v. Loston, 2013 KA 1885, 2014 WL 1778371 (La. App. 1st Cir. May 2, 2014); St. Rec. Vol. 3 of 3, 1st Cir. Order, 2013 KA 1885, 5/2/14.

[8] St. Rec. Vol. 3 of 3, Application for Post-Conviction Relief, 4/20/15.

[9] St. Rec. Vol. 3 of 3, Order, 7/22/15.

[10] St. Rec. Vol. 3 of 3, 1st Cir. Order, 2015 KW 1273, 11/4/15.

conviction burden of proof pursuant to La. Code Crim. P. art. 930.2, referencing the attached state trial court's written reasons.[11]

Petitioner thereafter filed the instant federal application seeking habeas corpus relief alleging the following claims: (1) constructive denial of counsel; (2) appointed counsel had a conflict of interest; (3) ineffective assistance of counsel in that counsel failed to (a) challenge the jury venire; (b) secure an expert witness; and (c) subject the prosecution's case to meaningful adversarial review and perform an adequate investigation; and (4) insufficient evidence supported his armed robbery conviction.[12]

The state does not challenge the timeliness of petitioner's application. The state argues that petitioner's claims relating to constructive denial of counsel and ineffective assistance of counsel lack merit. The state did not expressly acknowledge petitioner's insufficient evidence claim.[13] Petitioner filed a traverse.[14]

## I. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

---

[11] State ex rel. Loston v. State, 215 So. 3d 230 (La. 2017); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2015-KH-2198, 4/7/17.
[12] Rec. Doc. 3.
[13] Rec. Doc. 8.
[14] Rec. Doc. 9.

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein.  White, 134 S. Ct. at

1701.

## II. Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this

case as follows:

On the late afternoon of November 24, 2012, seventy-eight-year-old Frank Hoogeveen, Jr., drove from Wal–Mart to his home in Raceland on La. Hwy. 652. As Frank pulled into his driveway, he saw the defendant in a black Chevrolet truck pull off on the side of the road in front of Frank's house.  Frank had noticed that the defendant had been following him for some time.  The defendant approached Frank and told him he had a flat tire and also asked Frank if he could have some water.  Frank got the defendant a glass of water.  The defendant, who was wearing a short-sleeve shirt, told Frank he was cold. Frank told the defendant to sit in his (the defendant's) truck while he went to get his car jack.  Because he had trouble walking, Frank used a golf cart to get around.  Frank drove his cart to his shed, retrieved his jack, and drove to the defendant's truck.  The defendant had a four-

6

socket lug wrench in his hand.  Frank got out of his cart, put the jack down, and looked at the defendant's tire.  The defendant then told Frank that his tire did not look that low and that he felt he could make it home.  Frank put his jack back on his cart and he got in.  At that point, the defendant grabbed Frank and threw him to the ground.  He told Frank it was a hold up, and that he wanted his wallet.  Frank struggled to prevent the defendant from getting his wallet, which he kept zipped in his overalls.  The defendant struck Frank in the head with the lug wrench, grabbed his wallet, and left in his (own) truck.  Frank's wallet contained credit cards and about forty dollars in cash.  Bleeding profusely, Frank got help from his neighbors. The defendant's thumb print was lifted off the drinking glass, and the defendant's DNA was identified from a swab take from the drinking glass.  Frank also identified the defendant in a photographic lineup as the person who robbed him.[15]

### III. Petitioner's Claims[16]

### A. Insufficient Evidence

Loston claims that there was insufficient evidence to convict him of armed robbery.[17]  He claims that the evidence did not show that he was in possession of a lug wrench at the time he took the victim's wallet.

Petitioner raised this claim on direct appeal.  In the last reasoned state court judgment addressing petitioner's claim of insufficient evidence, the Louisiana First Circuit found sufficient evidence to establish that an armed robbery occurred under Jackson v. Virginia, 443 U.S. 207, 319 (1979), and related state laws.[18]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the

---

[15] Loston, 2014 WL 1778371, at *1; St. Rec. Vol. 3 of 3, 1st Cir. Order, 2013 KA 1885, pp. 2-3, 5/2/14.
[16] For ease of analysis, this Report and Recommendation addresses petitioner's claims in a different order than they were listed in his federal application.
[17] The state does not appear to expressly identify and acknowledge petitioner's insufficiency of the evidence claim in its response. Rec. Doc. 8.  While this claim appears to be unexhausted because it was not raised on direct appeal to the Louisiana Supreme Court, the state does not raise the defense.  It is clear that a federal court has the authority to deny habeas claims on the merits regardless of whether the petitioner exhausted his state court remedies and whether exhaustion is waived by the state.  28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n. 8 (E.D. La. May 13, 2008).  Because the claim is meritless, the undersigned recommends that it simply be denied on that basis in the interest of judicial economy.
[18] Loston, 2014 WL 1778371, at *1-3; St. Rec. Vol. 3 of 3, 1st Cir. Order, 2013 KA 1885, pp. 3-6, 5/2/14.

decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); <u>Taylor v. Day</u>, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), <u>aff'd</u>, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, the Court finds that Loston has made no such showing.

As the Louisiana First Circuit correctly noted, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979).  In <u>Jackson</u>, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Id.</u> at 319.  Accordingly, "[t]he <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)) (emphasis added); <u>see also</u> <u>Cavazos v. Smith</u>, 565 U.S. 1, 2 (2011) ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").  Moreover, because the state court's decision applying the already deferential <u>Jackson</u> standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential."  <u>Parker v. Matthews</u>, 132 S. Ct. 2148, 2152 (2012); <u>see also</u> <u>Coleman v. Johnson</u>, 132 S. Ct. 2060, 2062 (2012) (per curiam).

Petitioner was charged with and convicted of armed robbery.  In Louisiana, armed robbery is "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. Rev. Stat. § 14:64.  The "force or intimidation" in an armed robbery "may be applied at any time in the course of the crime in order to complete the offense." State v. Walker, 681 So. 2d 1023, 1028 (La. App. 2d Cir. 1996).  Thus, an armed robbery is committed "not only if the perpetrator uses force or intimidation to take possession of the property, but also if force or intimidation is used to retain possession immediately after the taking, or to carry away the property, or to facilitate escape." State v. Meyers, 620 So. 2d 1160, 1163 (La. 1993) (finding that defendant committed a robbery when he used force or intimidation to retain possession of money he had just taken from a cash register).

Under Louisiana law, armed robbery is a general intent crime.  State v. Smith, 23 So. 3d 291, 297-98 (La. 2009); State v. Payne, 540 So. 2d 520, 523-524 (La. App. 1st Cir. 1989). "General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. Rev. Stat. § 14:10(2).  In Louisiana law, general intent "is shown by the very doing of the acts which have been declared criminal." State v. Oliphant, 113 So.3d 165, 172 (La. 2013) (citation omitted).

To convict Loston of armed robbery, the state was required to prove beyond a reasonable doubt all elements of the statute.  State v. Garner, 532 So. 2d 429, 434 (La. App. 1st Cir. 1988). Under the Louisiana criminal code, anything of value "must be given the broadest possible construction, including any conceivable thing of the slightest value." La. Rev. Stat. § 14:2(A)(2).

A dangerous weapon is defined broadly as "any gas, liquid, or other substance or instrumentality, which in the manner used, is calculated or likely to produce death or great bodily harm." Id. § 14:2(A)(3). In considering whether a weapon is dangerous, Louisiana courts look not only at the inherent danger a weapon possesses, but also at whether an object could be used in a way to cause violence or great bodily harm. See State v. Cotton, 646 So. 2d 1144, 1145–46 (La. App. 5th Cir. 2008) (explaining that Louisiana courts have found a wide variety of objects to be dangerous weapons including an ink pen, liquor bottle, and a metal post sign).

Petitioner does not contest that he was the perpetrator of the crime or that he used force or intimidation when he took the victim's wallet, which contained cash and a credit card, against his will. Petitioner argues that there was insufficient evidence demonstrating that he was armed with a dangerous weapon at the time the robbery took place. Petitioner claims that, while the lug wrench may have been in the area because he intended to change his tire, he did not use it to force the victim to surrender his wallet.

In the instant case, the state presented testimony from the victim, Frank Hoogeveen, who testified that he noticed a vehicle following him as he drove home. When Hoogeveen arrived home, petitioner approached him and told him he had a flat tire and needed a jack. He also asked for a glass of water. Hoogeveen first gave petitioner a glass of water and then, because petitioner was cold, Hoogeveen told him to wait in the truck. Hoogeveen left in his golf cart to retrieve a jack from his shed. When Hoogeveen returned, he saw petitioner holding a four-way lug wrench. Hoogeveen asked petitioner for the spare tire, and petitioner replied that his wife had removed it from the truck. Petitioner told Hoogeveen he thought he could make it home without changing the tire but he needed gas. As Hoogeveen put the jack in his golf cart and sat down, petitioner grabbed him and said, "This is a hold up. I want your wallet." Hoogeveen testified that when he

tried to prevent the petitioner from taking his wallet, petitioner hit him with the lug wrench, grabbed his wallet, and fled the scene.

Detective Jeff Chamberlain with the Lafourche Parish Sheriff's Office testified that he interviewed the victim once he had been released from the hospital. Chamberlain testified that Hoogeveen told him that petitioner, who Hoogeveen identified in a photographic line up, threw him to the ground, hit him with a tire tool, took his wallet, and fled the scene.

The jury had before it evidence that petitioner hit victim with a lug wrench and took his wallet. The elements of the crime and petitioner's guilt were established through the victim's testimony, and it is clear that a victim's testimony alone is generally sufficient evidence to support a conviction. Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 9430310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Holderfield v. Jones, 903 F. Supp. 1011, 1017 (E.D. La. 1995). Although petitioner claims that, at the time of the initial interview, the victim did not tell the police that petitioner was armed with the lug wrench when he took the victim's wallet, Detective Chamberlain testified to the contrary. Further, the victim repeatedly testified at trial that petitioner hit him with the lug wrench while taking his wallet and the jury obviously found his testimony credible. Where a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr.

11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational.* A rational trier of fact could easily have found that Loston robbed the victim while armed with a lug wrench. The jury was well within its authority to make credibility determinations as to the testimony of the witnesses. It is not for this court, on federal habeas review, to reevaluate the credibility of witness statements or the weight of the evidence or to substitute its own judgment for the trier of fact, whose fact-finding must be given deference. Therefore, petitioner cannot show that the state court's decision rejecting his sufficiency of the evidence claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Petitioner is not entitled to relief as to this claim.

## B. Denial of Counsel of Choice

Petitioner next claims he was constructively denied counsel when "the trial court erroneously relieved and replaced petitioner's paid attorney with a court appointed attorney."[19] He claims that the state trial court refused to let his retained counsel enroll when she appeared and sought a continuance of trial.

Petitioner raised his claim in his application for post-conviction relief. The state trial court found that there were no issues of fact or law upon which relief could be granted.[20] The First Circuit denied petitioner's related writ application without written reasons.[21] The Louisiana Supreme Court found petitioner failed to meet his post-conviction burden of proof.[22]

---

[19] Rec. Doc. 3, p. 29.
[20] St. Rec. Vol. 3 of 3, Order, 7/22/15.
[21] St. Rec. Vol. 3 of 3, 1st Cir Order, 2015 KW 1273, 11/4/15.
[22] State ex rel. Loston, 245 So. 3d at 230; St. Rec. Vol. 3 of 3, La. S. Ct. Order, 15-KH-2198, 4/7/17.

"The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.' [The United States Supreme Court has] previously held that an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." United States v. Gonzalez–Lopez, 548 U.S. 140, 144, 126 S. Ct. 2557, 165 L.Ed.2d 409 (2006). That said, the Supreme Court has further acknowledged that "the right to counsel of choice is circumscribed in several important respects." Id. (quotation marks omitted). Of importance in the instant case, the Supreme Court has "recognized a trial court's wide latitude in balancing the right to counsel of choice ... against the demands of its calendar." Id. at 152 (citing Wheat v. United States, 486 U.S. 153, 163–164 (1988) and Morris v. Slappy, 461 U.S. 1, 11–12 (1983)). Thus, a trial court has broad discretion and "power to enforce rules or adhere to practices that determine which attorneys may appear before it, or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." Gonzalez–Lopez, 548 U.S. at 151–52. "[T]rial courts must necessarily be wary of last minute requests to change counsel lest they impede the prompt and efficient administration of justice." United States v. Pineda Pineda, 481 F. App'x 211, 212 (5th Cir. 2012) (quoting McQueen v. Blackburn, 755 F.2d 1174, 1178 (5th Cir. 1985)); United States v. Magee, 741 F.2d 93, 95 (5th Cir.1984) (holding that "it is within the judge's discretion to deny a change of counsel on the morning of trial if the change would require a continuance.").

Accordingly, the Supreme Court has expressly held:

Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel.

Morris, 461 U.S. at 11–12 (quotation marks omitted).

Here, no evidence supports petitioner's claim that the trial court "refused" to allow retained counsel, La'Derical Wagner, to enroll. At a hearing on Friday, July 12, 2013, appointed defense counsel, Assistant Public Defender Julie Erny, requested a continuance of the trial, which was scheduled to commence the following Monday, July 15, 2013. At that time, Erny informed the trial court that attorney Wagner, who was present at the hearing, would enroll as counsel if the trial was continued. After a bench conference, the trial court noted that there was no written motion to enroll or a written motion for a continuance and no proper basis for a continuance and denied Erny's oral motion for a continuance.[23]

On the morning of trial, petitioner complained of Erny's representation and claimed he had retained an attorney.[24] The trial court responded as follows:

> I was informed by your Public Defender that there was an attorney who was going to enroll in this case. You told me there was an attorney that was going to enroll in this case. That never happened.
> I instructed Ms. Erny to tell that attorney to contact the DA's office so that we would know she was enrolling. She never contacted a sole. She never filed a piece of paper in the courtroom. She never did anything.
> On Friday, the first day of my trials, she appeared and asked if she enrolled would I continue the trial. I informed her no because there was no basis. She had never enrolled. She has to this date never enrolled.[25]

The trial court concluded, "So as far as there being another attorney she has never done anything in this matter…."[26] At no time was Wagner prevented from enrolling as counsel, it appears that she simply elected not to enroll when the request for a continuance of the trial was denied.

---

[23] St. Rec. Vol. 1 of 3, Hearing Transcript, 7/12/13; St. Rec. Vol. 1 of 3, Trial Transcript, pp. 28-29, 7/15/13.
[24] St. Rec. Vol. 1 of 3, Trial Transcript, pp. 9-11, 22-36, 7/15/13.
[25] Id., at pp. 28-29.
[26] Id. at p. 29.

14

Any claim that the denial of the continuance of the trial interfered petitioner's fair and reasonable opportunity to obtain particular counsel fares no better. The United States Fifth Circuit Court of Appeals has explained:

> [F]ailure to obtain counsel within a reasonable time may operate as a waiver of that right [of a defendant to secure representation of his own choosing].
>
> After a defendant has been given a fair or reasonable opportunity to obtain counsel of choice, the decision to grant or deny a continuance to permit a further opportunity to do so rests within the broad discretion of the trial court.

Neal v. Texas, 870 F.2d 312, 315 (5th Cir.1989) (citation omitted). The Fifth Circuit has further explained:

> While what is a "fair or reasonable opportunity" depends upon all the surrounding circumstances, some factors to be considered include: (1) the length of the requested delay; (2) whether the lead counsel has an associate who is adequately prepared to try the case; (3) whether other continuances have been requested and granted; (4) the balanced convenience or inconvenience to litigants, witnesses, opposing counsel and the court; (5) whether the requested delay is for a legitimate reason, or whether it is dilatory and contrived; (6) whether there are other unique factors present.

Gandy v. Alabama, 569 F.2d 1318, 1324 (5th Cir.1978).

In this case, the bill of information was filed on January 1, 2013. Petitioner was provided with appointed counsel at his request.[27] At the pretrial conference on February 5, 2013, the case was set for trial for July 2013.[28] At no point before the day of trial did petitioner complain about the representation provided pretrial by the public defender's office. Further, there was no indication of his ability to pay for counsel prior to the Friday before trial. In addition, at no time did the trial court refuse petitioner the opportunity to hire counsel. In fact, according to petitioner, as of July 12, 2013, he had hired counsel.[29] The state trial court instructed defense counsel to have

---

[27] St. Rec. Vol. 1 of 3, Notice of Referral, 11/30/12; Order, 11/30/12.
[28] St. Rec. Vol. 1 of 3, Pretrial Conference Transcript, 2/5/13.
[29] St. Rec. Vol. 1 of 3, Trial Transcript, p. 28, 7/15/13.

petitioner's hired counsel contact the DA's office to advise if she was enrolling as counsel.[30] Ultimately, hired counsel chose not to enroll as counsel and did not appear at trial on his behalf. When petitioner objected to Erny's representation of him the first day of trial, the trial court advised that it would not appoint new counsel and gave petitioner the options of representing himself or continuing with Erny's representation.[31]  Petitioner elected not to represent himself, the trial court denied the public defender's request to withdraw and Erny remained appointed for trial.[32]  The record demonstrates, as addressed more fully later in this Report, that Erny was prepared for trial and competently defended petitioner.  In addition, the priority trial setting was an appropriate reason to go forward with trial under the standards set forth in Wheat.

Considering these factors and circumstances of the case, petitioner has not established that the failure to grant the continuance denied his right to choice of counsel.  For all of the foregoing reasons, Loston has not established a constitutional error in the state court's denial of the trial continuance.  He has not shown that the failure to grant the continuance harmed the defense, amounted to constructive denial of counsel or the denial of the right to choice of counsel.  The state court's denial of relief was neither contrary to nor an unreasonable application of federal law. Loston is not entitled to relief on this claim.

### C. Ineffective Assistance of Counsel

Petitioner raises various claims of ineffective assistance of counsel in his petition.  He claims he was denied the right to conflict free counsel.  He further claims that his counsel rendered constitutionally ineffective performance in failing to: (1) investigate and subject the prosecution's case to meaningful adversarial review; (2) retain an expert; and (3) move to strike the jury venire.

---

[30] Id., at pp. 28-29.
[31] Id., at pp. 24-33.
[32] Id., at pp. 27-37.

Petitioner raised these claims in his post-conviction application, and the trial court found the claims to be meritless.[33] The First Circuit denied petitioner's related writ application without stated reasons.[34] The Louisiana Supreme Court denied petitioner's related writ application finding he failed to show he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S. Ct.2052, 80 L.Ed.2d 674 (1984), and he failed to satisfy his post-conviction burden of proof under La. Code Crim. P. art.9302., referencing the attached trial court's written order.[35]

Because ineffective assistance of counsel claims present mixed questions of law and fact, this Court must defer to the state court decision rejecting such claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The

---

[33] St. Rec. Vol. 3 of 3, Order, 7/22/15.

[34] St. Rec. Vol. 3 of 3, 1st Cir. Order, 2015 KW 1273, 11/4/15.

[35] State ex rel. Loston, 215 So. 3d at 230; St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2015-KH-2198, 4/7/17.

more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by* Strickland *and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied* Strickland's *deferential standard.*

Id. at 105 (citations omitted; emphasis added). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

18

The clearly established federal law which governs ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate that (1) counsel's performance was deficient and (2) the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

Petitioner first alleges the trial court violated his Sixth Amendment right to conflict free counsel when it reappointed defense counsel after petitioner fired her and retained new counsel.

19

"'Under the Sixth Amendment, if a defendant has a constitutional right to counsel, he also has a corresponding right to representation that is free from any conflict of interest.'" <u>Morin v. Thaler</u>, 374 F. App'x 545, 551 (5th Cir.2010) (quoting <u>United States v. Vaquero</u>, 997 F.2d 78, 79 (5th Cir.1993)). A conflict of interest must be actual, rather than potential or speculative, to violate Sixth Amendment standards. <u>Id.</u> "When an attorney labors under a conflict of interest, he is prevented, by his own self interest or by his interest in another's welfare, from vigorously promoting the welfare of his client." <u>Vega v. Johnson</u>, 149 F.3d 354, 360 (5th Cir. 1998). "Mere disagreement about strategic litigation decisions is not a conflict of interest." <u>United Stated v. Fields</u>, 483 F.3d 313, 353 (5th Cir. 2007) (citing <u>United States v. Corona–Garcia</u>, 210 F.3d 973, 977 n. 2 (9th Cir. 2000)).

Initially, there is no evidence supporting petitioner's claim that he "fired" his appointed counsel. While petitioner voiced his dissatisfaction with Erny, when faced with the option of representing himself, petitioner chose to continue with Erny's representation. Erny then sought to withdraw based on petitioner's dissatisfaction with her representation of him.[36] The trial court denied her motion citing <u>State v. Seiss</u>, 428 So. 2d 444 (La. 1983).[37] Further, as explained above, the evidence of record shows that counsel allegedly "retained" by petitioner never enrolled as counsel in his case.

In essence the crux of petitioner's claim is that his appointed counsel labored under a "conflict of interest" which arose because Erny was aware that petitioner did not feel that Erny was adequately representing him and wanted the services of another attorney. However, even if there may have been a personality "conflict" between petitioner and his counsel, that is not the

---

[36] St. Rec. Vol. 1 of 3, Trial Transcript, p. 35-36, 7/15/13.
[37] <u>Id.</u>, at pp. 36-37.

type of "conflict of interest" which is of moment under the Sixth Amendment. Rather, as the United States Ninth Circuit Court of Appeals has explained:

> Obviously, the word "conflict" is also used in common parlance to describe a personality conflict, an artistic conflict, a family conflict, and many other sorts of antagonism—even war. In this context, however, as the Supreme Court cases make clear, we are talking about *legal* conflicts of interest—*an incompatibility between the interests of two of a lawyer's clients, or between the lawyer's own private interest and those of the client*. See Black's Law Dictionary 319 (8th ed.2004).

Plumlee v. Masto, 512 F.3d 1204, 1210 (9th Cir.2008) (emphasis added). The fact that an accused dislikes his attorney, or *vice versa*, does not, without more, constitute a *legal* "conflict of interest." See Hale v. Gibson, 227 F.3d 1298, 1313 (10th Cir. 2000) ("The fact that [defense counsel] did not like [his client] or did not trust him does not rise to the level of a conflict of interest. Personality conflicts are not conflicts of interest."). Simply put, there is no Sixth Amendment guarantee to "a 'meaningful relationship' between an accused and his counsel." Morris v. Slappy, 461 U.S. 1, 14 (1983).

Nevertheless, the fact that animosity between a petitioner and his counsel does not constitute a legal "conflict of interest" simply means that the ineffective assistance claim is not evaluated under the standard for conflicts of interest articulated by the Supreme Court in Cuyler v. Sullivan, 446 U.S. 335, 349–50 (1980), and Holloway v. Arkansas, 435 U.S. 475 (1978), where prejudice is presumed. Hale, 227 F.3d at 1313 n. 4; see Beets v. Scott, 65 F.3d 1258, 1260 (5th Cir.1995) (en banc). It does not preclude a petitioner from showing that animosity resulted in ineffective assistance of counsel under the Strickland standard, which requires proof of both deficient performance and prejudice. However, for the following reasons, it is clear that petitioner has not made the required showings under Strickland.

In the instant case, defense counsel was in an unenviable position. Petitioner was charged with armed robbery and admitted to forcibly taking the victim's wallet.[38] There was also DNA and fingerprint evidence tying petitioner to the scene of the crime. As a result, there was no real issue as to the identity of the perpetrator or that something of value was forcibly taken from the victim. Thus, the defense focused on creating reasonable doubt as to whether petitioner used the lug wrench when he robbed the victim. It is not apparent to the Court what other defense could have been raised by counsel, and petitioner certainly identifies no other defense. Simply because counsel was unable to fashion a different, nonexistent defense out of whole cloth does not mean that she was ineffective. See, e.g., Amos v. Cain, Civ. Action No. 04–2029, 2008 WL 782472, at *9 (E.D. La. Mar. 20, 2008).

Petitioner also essentially argues that counsel should have done more in this case. That argument fails to realize that when, as here, counsel is faced with the task of defending an obviously guilty client, options are limited. While petitioner suggests numerous actions he believes that counsel should have taken, those suggestions, which are addressed later in this report, have no merit.

Put simply, petitioner faults his counsel for not doing more to prove that the charge here was unfounded. However, petitioner bears the burden to prove that something else could have been done and that, if it had been done, there is a "reasonable probability" that the result of the proceeding would have been different. He has utterly failed to make such a showing in this case.

In summary, it is evident that the state court identified the proper standard, i.e. the Strickland standard, and applied it in a reasonable manner. Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application

---

[38] St. Rec. Vol 1 of 3, Defendant's Statement, 11/29/12.

of, clearly established Federal law, as determined by the Supreme Court of the United States.  He is not entitled to relief as to his conflict of claim.

Petitioner next claims that his counsel did not advocate on his behalf by subjecting the state's case to "meaningful adversarial testing" under the standards set forth in United States v. Cronic, 466 U.S. 648 (1984).  He more specifically claims his counsel was ineffective for: (1) failing to investigate; (2) waiving opening statements; (3) failing to call examining nurses and physicians to testify regarding the medical reports and whether the victim's injuries were consistent with being hit with a lug wrench; (4) failing to consult with an expert; (5) failing to challenge Ms. Arcement's testimony; (6) entering into numerous stipulations; and (7) failing to move to strike the entire jury venire.

In Cronic, the Supreme Court held that a defendant may be constructively denied counsel, even though an attorney had been appointed to represent him.  The Cronic Court recognized that the performance of counsel may be so inadequate as to constitute no assistance of counsel at all, despite the physical presence of an attorney at the proceeding.  Cronic, 466 U.S. at 654 n. 11.  The Cronic presumption of prejudice arises in circumstances where: (1) there exists a "complete denial of counsel" or a denial of counsel "at a critical stage" of defendant's trial; (2) defense counsel fails to "subject the prosecution's case to meaningful adversarial testing"; or (3) counsel "is called upon to render assistance where competent counsel very likely could not." Cronic, 466 U.S. at 658-59 (citations omitted).  Only in these "circumstances of magnitude" may "the likelihood that the verdict is unreliable [be] so high" that a constitutional violation may be found.  Mickens v. Taylor, 535 U.S. 162, 166 (2002).

The Supreme Court has also emphasized that, for Cronic to apply, "the attorney's failure must be complete."  Bell, 535 U.S. at 697. "For purposes of distinguishing between the rule of

Strickland and that of Cronic," the Supreme Court held that a case does not come under Cronic merely because counsel failed to "oppose the prosecution ... at specific points" in the proceeding. Bell, 535 U.S. at 697. The distinction between counsel's failure to oppose the prosecution entirely and counsel's failure to do so at certain points is a "difference ... not of degree but of kind." Bell, 535 U.S. at 697. The Cronic standard applies only when counsel has *entirely* failed to challenge the prosecution's case. Id. at 697, 122 S.Ct. 1843 (emphasis added); Riddle v. Cockrell, 288 F.3d 713, 718 (5th Cir. 2002) ("constructive denial of counsel" sufficient to support a presumption of prejudice arises only when counsel was absent from the courtroom, there was an actual conflict of interest, or there was official interference with the defense); Mayo v. Cockrell, 287 F.3d 336, 340 n.3 (5th Cir. 2002); Burdine v. Johnson, 262 F.3d 336, 344 n.4 (5th Cir. 2001).

The petitioner has the burden to show that he was constructively denied counsel. Childress v. Johnson, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997). "It is not enough for the defendant to show mere 'shoddy representation' or to prove the existence of 'errors, omissions, or strategic blunders' by counsel. Bad lawyering, regardless of how bad, does not support the [per se] presumption of prejudice." Johnson v. Cockrell, 301 F.3d 234, 238-39 (5th Cir. 2002) (citing Jackson v. Johnson, 150 F.3d 520, 525 (5th Cir. 1998)) (quoting Childress, 103 F.3d at 1228-29).

The issue of the constructive denial of counsel under Cronic is a mixed question of law and fact. French v. Jones, 225 F.3d 658, 2000 WL 1033021, at *3 (6th Cir. Jul. 18, 2000) (Table, Text in Westlaw). Thus, the question before this court is whether the state court's denial of relief on this issue was contrary to or an unreasonable application of United States Supreme Court precedent.

The state court's denial of relief on this issue was not specifically based on Cronic. The Louisiana Supreme Court instead found that petitioner failed to show he received ineffective

assistance of counsel under Strickland.    Nevertheless, Loston has not shown error in the application of that standard or that his claim should have been evaluated or would have been evaluated differently under the Cronic presumption of prejudice.

The state court record reflects that Loston's appointed trial counsel actively challenged the State's evidence throughout the trial.    The transcripts of the state court proceedings demonstrate that counsel was fully familiar with the case and adequately prepared to challenge the state's evidence.    There is nothing in this record to suggest that petitioner's trial counsel was "inert" in her representation of petitioner at trial.    Jackson v. Johnson, 150 F.3d at 525.    Loston has not established that he was constructively denied counsel under the Cronic standard.    The denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.    His specific challenges to counsel's actions will be further addressed below under Strickland.

Petitioner claims that his counsel failed to investigate the case.    To prevail on a claim concerning inadequate investigation and preparation, a petitioner must show that a more thorough investigation or better preparation would have in fact benefited the defense.    In other words, he must show that allegedly exculpatory evidence existed and would have been revealed through additional efforts.    See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).

Petitioner offers no evidence that his counsel actually failed to investigate his case. Nonetheless, even if petitioner were able to establish that fact, that alone would not suffice. Petitioner must further establish that the investigation would have resulted in a reasonable probability that the outcome of the trial would have been different.    That defect is fatal, because a

petitioner's bare speculation that additional investigation would have resulted in a different outcome at trial is insufficient to prove the prejudice required to prevail on such a claim. See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

Petitioner next contends his counsel was ineffective in failing to give an opening statement. He does not expound on this argument or explain how counsel's decision was objectively unreasonable. Nor does he indicate how the alleged failure to give an opening statement may have impacted the verdict.

Nevertheless, counsel's decision as to whether to give an opening statement falls with the zone of trial strategy. Murray v. Maggio, 736 F.2d 279, 283 (5th Cir.1984) (citing William v. Beto, 354 F.2d 698, 703 (5th Cir.1965) (Whether or not to make an opening statement to jury is "matter of professional judgment")); see also United States v. Stedman, 69 F.3d 737, 740 (5th Cir.1995) (ineffective-assistance claim based on failure to make opening statement failed because movant did not allege how or why trial would have ended differently but for an opening statement).

Initially, petitioner's claim that his counsel waived opening statement is incorrect as a matter of fact. A review of the record shows that defense counsel gave an opening statement. She stated:

> I don't have to give an opening statement because it's not my burden of proof to prove my client's innocence.
>
> What I'm asking you to do is, please, listen to the evidence. Opening statements is [sic] not evidence. Listen to the witnesses, what they testify to. Look at the evidence. In the end, you will conclude that there's one element in this case that has not been proven beyond a reasonable doubt. Please listen to the witnesses carefully. Don't make no [sic] judgment on my client at this point.[39]

---

[39] St. Rec. Vol. 2 of 3, Trial Transcript (con't), p. 174, 7/15/13.

The point of counsel's statement, although brief, was that petitioner was not guilty of the crime as charged.  Petitioner offers nothing to show that the decision by counsel to give an abbreviated opening statement was not strategic in nature.  To reiterate, on habeas review, this Court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.  Indeed, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner.  Strickland, 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008).  Loston has not met that burden in this case.  The state court's determination was not an unreasonable application of Strickland.

Petitioner also claims that his counsel was ineffective for failing to call the purported medical witnesses who treated the victim after the robbery and who could have testified at trial that the victim's injuries were consistent with being thrown to the ground rather than being hit with a lug wrench.  As the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.  For this reason, we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.  This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done

so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Here, petitioner presented no evidence, such as affidavits from uncalled witnesses demonstrating that they would have testified in a manner beneficial to the defense. Therefore, again, he obviously failed to meet his burden of proof with respect to this claim as it relates to those uncalled witnesses. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Further, petitioner has not established that any of the nurses or physicians were actually available to testify at trial. The requirement that a petitioner present evidence that a proposed witness was available to testify at trial and would have done so is a prerequisite to the granting of relief, not "a matter of formalism." Woodfox, 609 F.3d at 808. Therefore, this claim necessarily fails.

Petitioner next argues that his counsel should have hired an expert "to rebut the erroneously allowed opinion evidence of non-expert witnesses at trial, photographic evidence presented at trial, and to explain other reasonable hypotheses of the incident."[40]  He claims an expert could have countered witness testimony concerning the victim's injuries and supported his defense that he pushed the victim to the ground rather than hit him with a lug wrench.

The law, however, is well settled that an indigent defendant does not have an automatic right to expert assistance, even upon demand.  Yohey v. Collins, 985 F.2d 222, 227 (5th Cir. 1993). Rather, he must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial."  Id.; Griffith v. Quarterman, 196 F. App'x 237, 243 (5th Cir. 2006); see also, Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (citing Strickland, 466 U.S. at 687).  The requirement that the petitioner establish prejudice based on his counsel's failure to call a witness by the naming the witness, setting forth the proposed testimony, demonstrating that the witness was available and would have testified and showing the testimony would have been favorable to his defense applies to both lay and expert witnesses.  Woodfox, 609 F.2d at 808 (citing Day, F.2d 566 at 538).

Petitioner has presented no evidence demonstrating that a retained or appointed expert would have testified that the victim's injuries were not a result of being hit with a lug wrench.  See Scott v. Louisiana, 934 F.2d 631, 633 (5th Cir. 1991).  In fact, petitioner fails to identify any particular expert witness, his availability to testify, and the content or substance of the expert witness' testimony.  As a result, this court cannot find counsel ineffective for failing to present the testimony of an expert who has not even been shown to exist.  Anthony, 2009 WL 3564827, at *8

---

[40] Rec. Doc. 9, p. 6.

("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue.")

Petitioner complains that his counsel failed to cross-examine Patrice Arcement who testified that Hoogeveen, who was bleeding profusely, sought the assistance of her and her husband after he had been robbed. The Court notes that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 F. App'x 769 (5th Cir. 2005); accord Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), aff'd, 444 F. App'x 835 (5th Cir. 2011); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, 359 F. App'x 462 (5th Cir. 2009); Parker v. Cain, 445 F. Supp. 2d 685, 710 (E.D. La. 2006). The United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689. It is irrelevant that another attorney might have made other choices or handled such issues differently. As the Supreme Court noted: "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Id.

Petitioner has not met his burden with respect to his claim. This Court cannot say that counsel's failure to cross-examine Patrice Arcement was so deficient as to violate petitioner's constitutional rights. Cross-examining Arcement would have accomplished little given that she did not personally witness the robbery. Likewise, given her testimony on direct that the victim

told her that the robber hit him in the head with a tire tool[41], defense counsel may reasonably have considered it unlikely that cross-examination of Arcement would have elicited favorable evidence. Even assuming, arguendo, that petitioner's counsel was deficient for failing to cross-examine Arcement, he has not offered any evidence to demonstrate that this failure altered the outcome of his trial, and his unsupported speculation is insufficient to satisfy the prejudice prong of Strickland.

Petitioner next claims counsel entered into "numerous" stipulations, including one related to the victim's hospital records. This claim is false. A review of the trial transcript does not reflect any stipulation entered into by counsel. It further reflects that no medical records were entered into evidence. To the extent that petitioner claims that his counsel should have entered the victim's hospital records into evidence, he has not shown a reasonable probability that the medical records would have altered the outcome of his trial. He is not entitled to relief as to this claim.

Petitioner's final claim is that his counsel was ineffective for failing to challenge the entire jury venire, which he claims was tainted when it heard "extrinsic facts and evidence."[42] Petitioner claims his protests, made in front of the jury venire, regarding his dissatisfaction with the representation by defense counsel adversely affected the prospective jurors and caused them to "assume negative connotations and inferences towards him."[43] He further claims the entire venire was tainted by the comments of five prospective jurors, Theressa Shadic O'Neal, Brent Orgeron, Len Daigrepont, Diane Tabor, and Kim Eymard, who expressed that they believed he was guilty.

The Sixth Amendment and Fourteenth Amendments provide a defendant with the right to a fair trial, which includes the right to an impartial jury. Morgan v. Illinois, 504 U.S. 719, 727 (1992); Ross v. Oklahoma, 487 U.S. 81 (1988); Miniel v. Cockrell, 339 F.3d 331, 338 (5th

---

[41] St. Rec. Vol. 2 of 3, Trial Transcript (cont'), p. 209, 7/15/13.
[42] Rec. Doc. 3, p. 35.
[43] Id., at pp. 8, 35.

Cir.2003).  Jurors need not be totally ignorant of the facts and issues involved in the case to be impartial.  <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961).  "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."  <u>Id.</u> at 723.  Thus, in selecting a jury, "[t]he standard for determining when a venire member may be excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."  <u>Soria v. Johnson</u>, 207 F.3d 232, 242 (5th Cir.2000) (quoting <u>Wainwright v. Witt</u>, 469 U.S. 412, 424 (1985)).  To demonstrate actual bias, "admission or factual proof" of bias must be presented.  <u>United States v. Bishop</u>, 264 F.3d 535, 554 (5th Cir.2001).

In this case, petitioner, in front of the jury venire, made various statements objecting to his representation by Erny.  Specifically, the following exchange occurred:

MS. ERNY:  Good Morning.  My name is Julie Erny and I'm a criminal defense attorney and I represent Mr. Donald Loston.

DONALD LOSTON:  Excuse me, Judge.

THE COURT:  Have a seat.

DONALD LOSTON:  I don't want her as my attorney.  I don't want her as my attorney –

THE COURT:  Mr. Loston – Mr. Loston –

DONALD LOSTON:  I need somebody that's going to fight for me, man.  I don't need to do this as my attorney.  I don't need this woman as my attorney.  I don't need this woman as my attorney, Judge.

THE COURT:  Come up.

DONALD LOSTON:  She ain't done nothing but trying to give me life.  She's not trying to help me.

THE COURT:  Mr.Loston, come up.

DONALD LOSTON:  I need somebody to fight for my life.  This is my life.

THE COURT: Be quiet.

DONALD LOSTON:  This is my life.

THE COURT:  Come here.

DONALD LOSTON:  I don't care about getting contempt, sir.

THE COURT:  State, approach, and Defense, approach.

DONALD LOSTON:  This is my life, Judge.

THE COURT:  Look at me.[44]

A discussion then occurred outside the hearing of the venire during which the trial court told petitioner he would be given an opportunity to speak once the courtroom was cleared.[45]  After roll call of the jury venire was taken, the prospective jurors were removed from the courtroom and petitioner expressed his dissatisfaction with Erny.[46]  Thereafter, the entire venire returned to the courtroom for preliminary instructions.[47]  The first panel of 14 prospective jurors was seated for voir dire and the remaining prospective jurors were removed from the courtroom.[48]

Voir dire of the first panel was completed without incident.  The prospective jurors affirmatively responded to the repeated inquiries as to whether they could apply the law as given by the trial court.[49]  The prospective jurors affirmatively responded that they understood that a defendant is presumed innocent.[50]  Susan Richardel and Cindy Duplantis both had family members

---

[44] St. Rec. Vol. 1 of 3, Trial Transcript, pp. 8-10, 7/15/13.
[45] Id., at pp. 10-11.
[46] Id., at pp. 12-37.
[47] Id., at pp. 37-43.
[48] Id., at pp. 43-44.
[49] Id., at pp. 50, 57.
[50] Id., at p. 59.

who were murdered and advised that they could not be fair jurors.[51]  When Erny asked, "If the State does not prove their case, each and every element beyond a reasonable doubt, can you look me in the eyes and tell me your verdict will be not guilty?", only Duplantis responded that she was uncertain.[52]  The trial court granted defense counsel's request to strike Duplantis and Richardel for cause.[53]  The defense used four peremptory challenges and the state one peremptory challenge to excuse five members of the panel.[54]

During voir dire of the second panel of 14 prospective jurors, petitioner interrupted on several occasions.[55]  Petitioner specifically refers to the following exchange that occurred when Erny introduced herself to the panel as petitioner's attorney:

> MS. ERNY:  Good morning, ladies and gentlemen.  My name is Julie Erny and I represent Mr. Loston.
>
> DONALD LOSTON:  No, you don't.  No you don't.  You don't represent me.
>
> THE COURT:  Keep going.
>
> DONALD LOSTON:  You might represent yourself.  You ain't representing me.
>
> THE COURT:  Ms. Erny, proceed.
>
> MS. ERNY: Yes, sir.
>
>   Under our Federal Constitution and our State Constitution every defendant in this country is presumed innocent.  Just because a person has been arrested you cannot presume that they committed a crime.
>
>   Can all of you uphold Mr. Loston's constitutional right that he is presumed innocent?  Mr. O'Neal?

---

[51] Id., at pp. 62-63.
[52] Id., at p. 63.
[53] Id., at pp. 65, 68
[54] Id., at pp. 64-69.
[55] Id., at pp. 85-88.

> THERESSA SHADIC O'NEAL: Yes.  I'm sorry, but with respect to the Courts I cannot for the life of me find that this man would be innocent in any way shape or form by just his reaction to this court proceeding."[56]

When Loston continued to disrupt voir dire by speaking out, the second panel was removed from the courtroom.[57]  Ultimately, the trial court found it appropriate to remove petitioner from the courtroom and inquire every 30 minutes if he intended to behave appropriately if he were returned to the courtroom.[58]

The second panel was then returned to the courtroom and were advised that petitioner had elected not to remain in the courtroom.[59]  During Erny's voir dire, Jennifer Wendt, Tina Armstrong, Tabor, and Patricia Naquin all affirmatively responded that they all could find petitioner not guilty if the state had not proven each element of the offense beyond a reasonable doubt.[60]  Then the following exchange occurred:

> BRENT ORGERON:  Just on his reactions to what we're fixing to I guess attest to more of your information to us my judgment would be he's a guilty guy just by his reaction of what he's doing.  I mean that's just the way I feel about it.  I don't think I even need any more information on the way he's acting.
>
> MS. ERNY:  So you basically have almost concluded he's guilty before he even has a trial and that's Mr. Orgeron?
> BRENT ORGERON:  Yes.
>
> MS. ERNY:  And that would also be Mr. Eymard?
>
> KIM EYMARD:  Yes.
>
> MS. ERNY:  Anyone else?  Mr. Daigrepont?
>
> GLEN DAIGREPONT:  Guilty.
>
> DIANE TABOR:  I find he's guilty if he runs his mouth like that.

---

[56] Id., at pp. 90-91.
[57] Id., at pp. 92-93.
[58] Id., at pp. 93-99.
[59] Id., at pp. 99-101.
[60] St. Rec. Vol. 1 of 3,Trial Transcript (con't), p. 106, 7/15/13.

MS. ERNY:  And that's Ms. Tabor.  Guilty?

DIANE TABOR:  Uh-huh (affirmative response).

MS. ERNY:  Ms. O'Neal, guilty?

THERESSA SHADIC O'NEAL:  As I voiced before.

MS. ERNY:  Yes, ma'am.

THERESSA SHADIC O'NEAL:  He has been read his Miranda rights.  I don't know how long he's been incarcerated –

THE COURT:  Ms. O'Neal, I think you're making comments about things that are probably beyond your knowledge.  But I understand and thank you.[61]

As voir dire continued, Eymard, Orgeron, Daigrepont, Tabor, O'Neal, Melvin Terrebonne, and Rose Guidry expressed doubt as to whether they could find petitioner not guilty.[62]  Tina Armstrong advised that she knew the victim but that she could be a fair juror.[63]  Dwayne Duncan said that he was not comfortable judging people.[64]  Upon further questioning, Jennifer Wendt, Armstrong, Patricia Naquin, Chestee Adams, Daigrepont, and Wayne Bonvillain all advised that they could find petitioner not guilty if they were not firmly convinced beyond a reasonable doubt that he had committed the crime charged.[65]

Duncan, Orgeron, Terrebonne, O'Neal, and Eymard were excused for cause.[66]  The defense used four peremptory challenges to excuse Armstrong, Daigrepont, Tabor, and Guidry.[67]  Wendt, Naquin, Adams, and Bonvillian were seated as jurors.[68]

---

[61] Id., at pp. 106-108.
[62] Id., at pp. 106-108, 110-111, 112-114.
[63] Id., at pp. 109-110.
[64] Id., at p. 113.
[65] Id., at pp. 112-115.
[66] Id., at pp. 116-120.
[67] Id., at pp. 115, 117-120.
[68] Id., at p. 121.

Petitioner was not present in the courtroom during voir dire of the third panel of 14 prospective jurors.[69]  During the prosecution's voir dire, Judith Chiasson expressed that she would have difficulty rendering a verdict because she was afraid she would make a mistake.[70]  No other prospective juror expressed any concerns.[71]  During voir dire by defense, Erny specifically asked questions regarding whether anyone would be unable to apply the presumption of innocence and whether anyone presumed guilt based on the arrest of a person.[72]  No panelist responded in the affirmative to either question.[73]

Chiasson was excused by the trial court for cause.[74]  The defense used four peremptory challenges to excuse Vivian Billiot, Terry Lindsey, Catherine Arvello, and Timothy Richard.[75]  The trial court excused Brian Hymel and Kimberly Tate.[76]  Reynold White was accepted as the final juror and Dawn Duet and Lori Knobloch were accepted as the alternates.[77]  The remaining panelists were excused.[78]

Petitioner has failed to demonstrate that his counsel was ineffective for failing to move to strike the entire venire or any resulting prejudice.  A thorough examination of the voir dire reveals that the prospective jurors were repeatedly informed by counsel about the presumption of innocence and the state's burden to prove guilt reasonable doubt to sustain a conviction.  The prospective jurors were questioned concerning possible biases and preconceptions, including whether they believed that petitioner was guilty.  Every prospective juror who expressed bias or

---

[69] Id., at pp. 122-150.
[70] Id., at p. 138.
[71] Id., at p. 139.
[72] Id., at pp. 139-140.
[73] Id., at pp. 143-146.
[74] Id., at pp. 144-145.
[75] Id., at pp. 143-146.
[76] Id., at pp. 125-126, 130-132.
[77] Id., at pp. 144, 146-149.
[78] Id., at p. 149.

preconceptions, whether based on petitioner's behavior in court, his arrest, or some other factor, was removed.

There is simply nothing in the record to indicate that the selected jurors were tainted by the comments made by either petitioner or the excused prospective jurors during voir dire, or that petitioner was tried by a partial jury. Those persons selected as jurors expressed that they would be fair and impartial and would not convict petitioner unless the state proved petitioner's guilt beyond a reasonable doubt. Thus, there was no basis for counsel to move to strike the entire venire nor has petitioner established that there is a reasonable probability that such a motion would have been successful. See State v. Smith, No. 2014 KA 0456, 2014 WL 7331935, at *4-6 (La. App. 1st Cir. Dec. 23, 2014) (finding no error in the trial court's refusal to dismiss entire jury panel after it witnessed an outburst by defendant during voir dire where there was no showing that entire panel was tainted by the defendant's conduct); State v. Cook, 598 So.2d 423 (La. App. 5th Cir. 1992) (no error in denying motion for mistrial when several prospective jurors, who were ultimately excused, expressed opinions about defendant's guilt where the selected jurors swore to apply the law as given and were fair and impartial); State v. Baker, 528 So.2d 776, 779 (La. App. 3d Cir. 1988) (trial court did not abuse its discretion in failing to strike entire panel after a prospective juror expressed a preconceived opinion as to the defendant's guilt where the panel members "affirmatively acknowledged that they possessed no opinion of guilt, comprehended the burden of proof and would consider Baker innocent until proven guilty,"); State v. Young, 469 So.2d 1014, 1019-20 (La. App. 1st Cir. 1985) (no error in failing to summon a new jury venire or grant a mistrial based on comments by several prospective jurors regarding defendant's guilt where those prospective jurors who may have been influenced by the comments were excused).

For all of these reasons, it is clear that petitioner has not demonstrated that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court denies relief.

**RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Donald Loston be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[79]

New Orleans, Louisiana, this ⎽9th⎽ day of May, 2018.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[79] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.